Robert B. Groseclose, ABA #7605032
CSG, Inc.
714 Fourth Avenue, Suite 200
Fairbanks, AK 99701
(907) 452-1855
(907) 452-8154 fax
bob@alaskalaw.com
Attorney for Sheila Kluck

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

SHEILA KLUCK, )
)
              Plaintiff, )
)
v. )
)
FAIRBANKS GOLD MINING, INC. )
)
              Defendant, )
_____)
Case No. 4:17-cv-00030-JWS

## FIRST AMENDED COMPLAINT
### (Verified)

For her *First Amended Complaint,* filed per FRCP 15(a)(1), plaintiff Sheila Kluck, by and through her undersigned counsel, complains and alleges as follows:

### PARTIES

1. At times pertinent, plaintiff Sheila Kluck was a resident of Fairbanks, Alaska.

2. Defendant Fairbanks Gold Mining Inc. is a Delaware corporation registered to do business in Alaska (as entity number 48244F), with registered agent: Registered Agents Solutions, Inc., of 1400 West Benson Blvd., Suite 370, Anchorage, AK 99503.

3. Defendant's physical address is #1 Fort Knox Road, Fairbanks, AK 99707-3726. Defendant operates a gold mine, known as "Fort Knox."

4. The actions giving rise to this complaint arose in the Fourth Judicial District at or near Fairbanks.

## ALLEGATIONS COMMON TO ALL COUNTS

5. In late 2015, defendant recruited plaintiff to work as its Chief Geotechnical Engineer at defendant's Ft. Knox location north of Fairbanks.

6. Plaintiff started employment with defendant on January 11, 2016.

7. Prior to starting employment with defendant on January 11, 2016, plaintiff, Kluck, age 48, had worked for 22 years in geotechnical engineering, geology, mining, and consulting, including as a corporate manager of geotechnical engineering. Her qualifications include Professional Engineer ("PE") in three disciplines, and Professional Geologist ("PG"). Plaintiff was and is qualified for the geotechnical engineering position.

8. Plaintiff's job as a Chief Geotechnical Engineer was to ensure slope stability and safety at mining sites.

9. Defendant did not provide plaintiff with necessary geotechnical information to do her job. Instead, defendant gave the male Chief Geologist control of geotechnical information.

10. Defendant allowed for the male Chief Geologist to conceal budget information from plaintiff that she needed to perform her job.

11. Defendant did not provide plaintiff with the geotechnical staff needed to do her job. Instead, the male Chief Geologist obtained this staff.

12. Two geotechnical auditors told the defendant that it should place geotechnical staff and monitoring equipment under plaintiff as the Chief Geotechnical Engineer. Instead, defendant kept under the Chief Geologist (not plaintiff) control over information, monitoring, and staff.

13. Plaintiff's salary was depressed because defendant did not provide sufficient staffing for plaintiff's Chief Geotechnical Engineer position. Instead, the male Chief Geologist kept the staffing that should have gone to plaintiff. This enabled the male Chief Geologist to receive an entitlement otherwise due plaintiff. Additionally, defendant limited plaintiff's communications with staff.

14. Instead of providing professional staff to the plaintiff, in February 2017, a temporary employee was provided to the plaintiff. Contrary to plaintiff's request, the employee was a surveyor with an engineering degree, and did not possess the geology knowledge needed to conduct the work needed.

15. Defendant has a Trigger Action Response Plan ("TARP"). It is an industry norm to have this plan for each mining site.

16. Defendant, acting through its male Chief Geologist, did not share complete TARP site standards with plaintiff, despite such TARP standards being necessary for the analysis and job performance expected of plaintiff to fulfill her job assignment as Chief Geotechnical Engineer.

17. In May, 2016, plaintiff warned the defendant to evacuate equipment passing under a rapidly moving slide. [NOTE: "Slide" denotes a landslide or rock slide of an open pit mine wall.]. Defendant disregarded plaintiff's warnings and instead listened to the male Chief Geologist.

18. A female geologist was told by defendant's Chief Geologist not to evacuate equipment regardless of the female geologist's judgment and despite plaintiff's indication that evacuation was appropriate for safe mine operation.

19. In 2016, plaintiff experienced and reported multiple incidents of hostile work environment, particularly from defendant's Senior Geologist, that plaintiff reported to defendant's Chief Geologist. Plaintiff's multiple complaints to the Chief Geologist were not resolved by defendant.

20. Similarly, plaintiff reported the multiple hostile workplace incidents to her supervisor, defendant's Technical Services Manager.

21. The hostile work environment issues were not resolved, leading to plaintiff, on or about October 28, 2016, explicitly asking for action to remedy a Senior Geologist's inappropriate attitude and behavior.

22. The hostile job environment, including the Senior Geologist's inappropriate behavior, negatively impacted the plaintiff's ability to perform her geotechnical responsibilities.

23. On approximately February 28, 2017, plaintiff received a pay raise and a bonus with a retroactive raise.

24. On March 2, 2017, without prior notice to plaintiff, without comporting with defendant's normal business procedure or with the February pay raise and bonus, defendant presented plaintiff with a "Performance Improvement Plan" ("PIP"). The PIP asserted that plaintiff required improvement in "Time Management," "Group Discussions," and "Deadlines."

25. The PIP was pretextual, and unfounded given that plaintiff Kluck had not received beforehand (as asserted by the PIP) clear and meaningful prior guidance, instruction, or communication as to perceived job performance deficiencies.

26. Defendant's male Technical Services Manager stated that plaintiff had not met his expectations, yet the male Technical Services Manager acknowledged that he had not seen plaintiff's resume or the job advertisement soliciting her employment until plaintiff provided it to her supervisor (Technical Services Manager) on March 16, 2017.

27. Despite normal business procedure and contrary to the procedure outlined in the PIP, defendant did not provide weekly evaluations either in writing or verbally. Defendant did not provide 30-day evaluation, nor follow up within 90 days of the PIP.

28. Defendant (acting through its male Technical Services Manager) would regularly "miss," without forewarning, scheduled PIP meetings.

29.. Defendant provided no explanation for the PIP or how plaintiff might improve.

30. On March 16, 2017, defendant's Human Resources Manager told defendant's Technical Services Manager that an annual review of plaintiff's performance needed to be provided. Yet, defendant never conducted an annual performance review of plaintiff during her employment, contrary to normal business procedure.

31. In May, 2017, a safety incident prompted plaintiff's further report of a safety concern to defendant. Plaintiff again reported a potential slide hazard based upon slide monitoring equipment indications that a slide was imminent.

32. Defendant, acting through its male Technical Services Manager, refused to act upon plaintiff's geotechnical recommendations and excluded plaintiff from the decision-making and plan for addressing the safety incident.

33. During the May, 2017, slide incident, defendant's male Technical Services Manager disregarded and downplayed plaintiff's input and instead acted upon and favored the male Chief Geologist's input, even though the May 2017 audit determined that plaintiff was in charge of geotechnical monitoring.

34. The May, 2017, slide moved substantially, consistent with plaintiff's warnings.

35. On June 2, 2017, plaintiff submitted a "Response to PIP" but defendant never addressed her response, other than the June 16, 2017, notice of "separation," terminating her employment.

36. The PIP itself was inaccurate and vague, serving merely to provide a pretext for defendant to "separate" plaintiff.

37. By letter dated June 16, 2017, defendant informed plaintiff that she was being "separated" from her employment.

## COUNT 1 – CIVIL RIGHTS DISCRIMINATION

38. Defendant's "separation" of plaintiff violates her right to be free of discrimination based on her gender, as protected under Alaska and federal law.

39. Defendant discriminated against plaintiff because of her protected class, namely because of her female gender.

40. Defendant's mistreatment of the plaintiff was in favor of a male Chief Geologist and other male employees.

41. Defendant ignored plaintiff's warnings of instability, despite evaluating and forecasting instability being within her area of expertise and within her job responsibility. Defendant instead chose the opinion of a male Chief Geologist, over plaintiff's opinion.

42. Plaintiff's male supervisor (i.e. defendant's Technical Services Manager) would only go out into the field with plaintiff if the male Chief Geologist accompanied them. While in the field, plaintiff's male supervisor would discuss geotechnical matters with the male Chief Geologist. Both men would walk away from plaintiff when discussing field conditions.

43. Defendant enabled an "old boys' network" to disregard plaintiff's role, authority, and her input on risk management of slope stability. This thwarted employee safety, good practices, and discriminated against plaintiff based upon her gender.

44. Defendant's Technical Services Manager further ignored plaintiff and the established authority structure by speaking directly with a male surveyor, under plaintiff's supervision and purview, regarding his work schedule and pay.

45. Defendant has created and enabled a culture of discrimination against the female gender.

46. Former female employees were also discriminated against by the Defendant.

47. Defendant's most recent self-report concludes that only 11% of its workforce is female.

48. As a direct, foreseeable, and consequential result of defendant's violation of plaintiff's rights, plaintiff has been damaged in an amount exceeding $100,000, the exact amount of which to be established at trial.

## COUNT 2 - RETALIATION FOR REPORTING SAFETY CONCERN

49. Plaintiff reported unsafe slope hazards to defendant, including those reported in May, 2016, and May, 2017.

50. Defendant, acting through its male supervisors and male managers argued against and discounted plaintiff's safety communications, reports, and the supporting data, despite the actively moving slides and the threatened harm they posed.

51. Defendant "separated" plaintiff's employment in retaliation for plaintiff reporting the unsafe slope condition.

52. Defendant's "separation" of plaintiff violates public policy and mining safety rules that encourage safety reporting and forbids retaliation based upon such reporting.

53. As a direct, foreseeable, and consequential result of defendant's retaliation, plaintiff has suffered damages in an amount exceeding $100,000, the exact amount of which to be determined at trial.

## COUNT 3 – WRONGFUL DISCHARGE/BREACH OF CONTRACT/BREACH OF COVENANT OF GOOD FAITH FAIR DEALING

54. Defendant's "separation" of plaintiff breached plaintiff's contract of employment.

55. Defendant's "separation" of plaintiff breached the covenant of good faith and fair dealing.

56. Defendant's "separation" of plaintiff tortiously and wrongfully discharged and terminated plaintiff.

57. As a direct, foreseeable, and consequential result of defendant's wrongful discharge of plaintiff, its breach of its obligation of good faith and fair dealing, and its

breach of plaintiff's employment contract, plaintiff has been damaged in an amount exceeding $100,000, the exact amount of which will be proven at trial.

WHEREFORE plaintiff seeks judgment against defendant as follows:

1. For an award of compensatory damages in an amount exceeding $100,000, the exact amount of which to be proven at trial.

2. For pre and post judgment interest as allowed by contract and law.

3. For an award of costs and attorney fees as allowed by law and court rule.

4. For such other and further relief as the court deems just in the premises.

DATED this 1st day of December, 2017.

        CSG, INC.
        Attorneys for Plaintiff Sheila Kluck


        By   /s/ Robert B. Groseclose
            Robert B. Groseclose, #7605032

# VERIFICATION

I, **Sheila Kluck**, attest and verify that the facts set forth in the foregoing *First Amended Complaint* are true and correct to the best of my knowledge and belief.

_____
**Sheila Kluck**

Subscribed and sworn to this 1st day of December, 2017, **Sheila Kluck**.

DUSTIN SCHROEDER
Notary Public
State of Washington
My Commission Expires
July 27, 2019

Notary Public in and for Washington
My commission expires: 07/27/2019

# **CERTIFICATE OF SERVICE**

The undersigned declares under penalty of perjury, under the laws of the United States, that the following is true and correct:

That on the _____ day of December, 2017, I electronically filed the foregoing document with the United States Court for the District of Alaska using the CM/ECF system, which will send electronic notifications of such filings to the attorneys of record in this case as follows:

| | |
|---|---|
| Talitha Birch Kindred<br>Holland & Hart, LLP<br>1029 W. Third Avenue, Suite 550<br>Anchorage, Ak 99501<br>TBKindred@hollandhart.com | Emily Hobbs-Wright<br>Holland & Hart, LLP<br>PO Box 8749<br>Denver, CO 80201-8749<br>Ehobbs-wright@hollandhart.com |

/s/ Robert B. Groseclose
CSG, Inc.